IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-00889-RBJ

GARY ALLEN KEMPER,

    Plaintiff,

v.

CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,

    Defendants.

# ORDER

This matter is before the Court on review of the Commissioner's decision denying plaintiff Gary Kemper's application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision by this Court on September 25, 2013 upon the filing of plaintiff's reply brief. The Court apologizes to the parties and counsel for its delay in addressing the case.

### I.     **Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards."

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit. Fed.R.Civ.P. 25(d)(1). By virtue of the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this lawsuit.

*Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

## II.     Facts

Mr. Kemper lives in Fort Collins, Colorado and has previously worked as a telephone operator, welder, and steel worker. He injured himself on the job in 1994, ultimately received workers compensation for the injury, and later claimed that the injury and resulting pain and mobility issues were completely disabling.

### a. Procedural History

This is the third time Mr. Kemper's case is before the Court. He first filed an application for SSI in August 2005. R. 57-62. At every step of the application process, the government concluded that Mr. Kemper was not disabled. He followed this circuitous administrative path until he exhausted his remedies at which point he filed an appeal in this Court. In that appeal, Judge Wiley Y. Daniel found that the ALJ ignored objective medical evidence from a state consultative examiner, Dr. Stan Jack, D.O., that indicated that Mr. Kemper suffered from a significant impairment that could be expected to produce his symptoms. *Kemper v. Astrue (Kemper I)*, 2009 WL 524981 (D. Colo. March 2, 2009). The ALJ's decision to find Mr. Kemper not impaired at step two of the sequential evaluation process, therefore, was error. *Id.* Judge Daniel remanded the case to the ALJ for further fact-finding. *Id.* On remand, the same ALJ hired a medical consultant—Dr. William Clayton—who opined that Mr. Kemper was not

disabled. On the basis of that evidence, the ALJ again denied benefits to Mr. Kemper without proceeding to Step Three. Once again, Mr. Kemper appealed to this Court, and Judge Daniel again reversed the ALJ's decision for failure to consider the objective medical evidence in the record at step two. *Kemper v. Astrue (Kemper II)*, 2012 WL 2190817 (D. Colo. June 14, 2012). This time Judge Daniel ordered that a different ALJ hear the case on remand and that this new ALJ find that Mr. Kemper met his burden at steps one and two and proceed to subsequent steps in the evaluation. *Id.*

Mr. Kemper filed two motions in connection with this appeal. First, he moved to cite supplemental authority. The Court granted this motion with respect to the additional materials filed by Mr. Kemper but denied any other relief requested therein. The second motion was filed after Judge Daniel remanded to the ALJ. Mr. Kemper, who represents himself *pro se,* apparently misunderstanding the nature of the remand, filed a "motion to attach to new case." Judge Daniel denied the motion due to lack of jurisdiction since the case had already been remanded to the ALJ.

Mr. Kemper then appealed the Court's denial of other relief in his motion to cite supplemental authority. The Court of Appeals for the Tenth Circuit denied this appeal as untimely. *Kemper v. Colvin*, 514 F. App'x 740 (10th Cir. 2013).

These appeals out of the way, Mr. Kemper's case returned to the Commissioner, this time ending up before a new ALJ. The ALJ found that Mr. Kemper is not entitled to benefits because he retains the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy. It is this decision that is before the Court.

    b. **Medical History**

The earliest medical evidence in this case comes from Dr. Lynn Barry, M.D. who examined Mr. Kemper in 1996 two years after his injury. Dr, Barry noted Mr. Kemper's subjective complaints of pain and reviewed an MRI revealing some minor bulging. Dr. Barry also observed some postural abnormalities and diagnosed a "fairly significant rotational spine injury." R. 295. Nonetheless, Dr. Barry recommended only therapeutic treatment rather than surgery. *Id.*

Later in 2000, Dr. Donn Turner examined Mr. Kemper and reviewed the MRI results. Dr. Turner's physical exam uncovered some "winging of his left scapular, and some left scapular muscle atrophy," but strength and sensation were completely unaffected. R. 114. In general, the results of the scan were relatively non-severe. R. 115. In 2005, Mr. Kemper underwent an MRI of his lumbar spine which revealed "minimal" and "extremely mild" disc bulges but otherwise nothing out of the ordinary. R. 193.

In December of 2005, Dr. Stan Jack performed a consultative examination of Mr. Kemper. R. 107-11. Dr. Jack summarized Mr. Kemper's complaints and noted that Mr. Kemper believes he is being misdiagnosed and that the real cause of his pain is a chondroma.[2] Dr. Jack expressed no opinion about the possibility of chondroma but told Mr. Kemper that if that was indeed what he was suffering from, then his orthopedist, Dr. Turner, would have to diagnose him and surgery would be the only option. R. 108. During the physical exam, Dr. Jack noticed that

> claimant appears to be in significant discomfort with minimal movement. He walks with a slow but steady appearing shuffle that is not wide based. He has loss of lumbar lordosis and walks somewhat hunched over holding his low back with his right hand. However, he is not using an assistive device. When I observed him walking during the exam initially he assumes this gait pattern but then after a few steps is able to walk upright with a normal gait. He adds that once he gets moving he does fairly well once the muscles relax.

---

[2] "A chondroma is a slow-growing, painless cartilaginous tumor. It may occur wherever there is cartilage." *Kemper (II)*, 2012 WL 2190817, *2 n.1 (quoting Taber's Cyclopedic Medical Dictionary (21st ed.2009)).

R. 108-09.  Dr. Jack further noted that Mr. Kemper evinced some pain response while moving about on the exam table and in the exam room.  He was, however, "able to take off his shoes which were high-laced boots and two layers of socks without any apparent difficulty."  R. 110.  Mr. Kemper has "significant lumbar scoliosis."  *Id.*  His upper extremity strength is normal, and while his lower extremity strength was difficult for Dr. Jack to measure, he noted normal muscle bulk and tone and no evidence of any atrophy.  *Id.*  Dr. Jack ultimately diagnosed possible degenerative joint disease and lumbar scoliosis.  R. 111.  He believed Mr. Kemper could stand or walk less than two hours in an eight-hour workday due to his "significant low back pain and neck pain."  *Id.*  That same pain would limit him to less than six hours of sitting with hourly breaks.  *Id.*  He also imposed certain postural, lifting, and environmental limitations.  A radiology report ordered by Dr. Jack noted "slight loss of cervical curve" and minimal disc narrowing in the cervical and lumbar spine.  R. 112.  Otherwise the x-rays revealed nothing out of the ordinary.

In response to the first remand from this Court, the ALJ sent interrogatories to Dr. William Clayton who answered them on April 30, 2010.  R. 198.  Dr. Clayton noted the lack of objective evidence confirming the severity of Mr. Kemper's symptoms, and that the subjective evidence in the record "displays unconscious or conscious symptom magnification."  R. 199.  Dr. Clayton also provided his own estimate of the RFC, suggesting that a 49 year old man with chronic back pain could be expected to sit for two hours at a time up to eight hours in a workday.  R. 202.  Such an individual could stand up to one hour at a time up to four hours per work day.  *Id.*  Finally, he opined that Mr. Kemper would need the opportunity to change his position between sitting and standing every fifteen minutes.  *Id.*

In 2013, after the *second* remand in this case, Mr. Kemper underwent yet another consultative exam, this time with Dr. Kerry Kamer, D.O. R. 301. Dr. Kamer, like the other physicians in the record, noted Mr. Kemper's subjective complaints of pain. Dr. Kamer observed that Mr. Kemper "appeared to sit comfortably during the exam and without pain-mitigating movements." R. 302. Generally, Dr. Kamer's notes reveal no outward signs of pain during the exam and no irregularities during ambulation or movement. Mr. Kemper even performed a full deep squat during the exam. R. 304. Dr. Kamer concluded with the following assessment:

> There are no recommended limitations on the number of hours he should be able to sit, stand, or walk during a normal 8-hour workday. There are no postural limitations recommended at this time. The amount of weight he should be able to lift or carry, is probably about 20-40 pounds, based on robust muscular power during full resisted strength testing today. . . . There are no manipulated limitations recommended at this time with reaching/pushing/pulling grasping, handling, and/or feeling.

R. 305.

### c. **ALJ Opinion**

The Social Security Administration uses a five-step process to determine whether a claimant qualifies for disability insurance benefits. Pursuant to Judge Daniel's earlier order, the new ALJ determined that Mr. Kemper had met his burden at steps one and two. She then proceeded with the remaining steps in the disability analysis.

At step three, the ALJ found that Mr. Kemper's impairments—degenerative disc disease of various portions of his spine—do not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 248.

At step four, the ALJ concluded that Mr. Kemper retained an RFC to do light work involving sitting and standing as needed, occasionally climbing stairs, balancing, crouching,

stooping, kneeling, and crawling, never climbing on ladders, ropes, and scaffolds, and occasionally reaching overhead. *Id.* The ALJ reached this conclusion by noting that Mr. Kemper's medically determinable impairments could be expected to produce his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. Specifically, the ALJ noted inconsistencies between Mr. Kemper's testimony and the record. Mr. Kemper testified that he could stand for about five minutes at a time and walk for less than ten minutes. R. 249. However the medical evidence, according to the ALJ, indicates otherwise. The ALJ proceeded to highlight the relatively minimal limitations uncovered by the MRIs and x-rays in the record as well as the opinions of most of the physicians involved in Mr. Kemper's case. Dr. Jack's contrary opinions were given "limited weight." R. 250. The ALJ made this decision, in part, because of the lack of objective medical evidence backing up Dr. Jack's limitations, but also due to the fact that other examining physicians had endorsed less restrictive limitations. Dr. Clayton's and Dr. Kamer's opinions—both endorsing milder restrictions—were both given "significant weight." R. 252.

At step five, the ALJ asked a vocational expert ("VE") about job opportunities available to someone with Mr. Kemper's RFC and vocational factors. R. 335-36. The VE identified the positions of cashier and assembler of small products. *Id.* The VE noted that the number of these jobs available to someone like Mr. Kemper would be reduced by about fifty percent due to his need to alternate between standing and sitting. *Id.* The ALJ, relying on this testimony, then concluded that Mr. Kemper was not disabled for purposes of the Act. R. 254.

    d. <u>New Evidence</u>

In this latest appeal, Mr. Kemper has submitted two additional pieces of evidence. The first is a reply letter to a request—presumably sent by Mr. Kemper—for a mailing address for

Dr. Iwamoto—presumably one of the Japanese doctors who authored the article about chondroma of the rib.[3] The second piece of evidence is a copy of an x-ray that appears to be the same x-ray on page 299 of the record.

### III.  Analysis

####   a.  The Commissioner Followed the Orders from This Court and the Court of Appeals for the Tenth Circuit.

Mr. Kemper's latest appeal accuses the Commissioner of failing to comply with Judge Daniel's order and the Tenth Circuit's order.  ECF No. 22 at 2.  Neither of these claims has merit.  Judge Daniel remanded the case to the Commissioner with instructions that a new ALJ determine that Mr. Kemper suffers from a severe impairment at step two and to proceed to analyze his claims in subsequent steps.  The Commissioner complied with these orders.  The Tenth Circuit's order contained no instructions for the lower court or the Commissioner on remand.  Rather the order stated that the court lacked jurisdiction over Mr. Kemper's case and dismissed the appeal.  Therefore the Commissioner could not and did not violate that order because there were no directions capable of being disobeyed.

####   b.  The Newly Submitted Evidence Does Not Warrant a Remand.

Sentence Six of 42 U.S.C. § 405(g) allows a court to remand a case to the Commissioner "only upon a showing that there is new evidence which is material."  Here the evidence is a letter

---

[3]  Mr. Kemper raised this issue in his earlier appeals.  According to Judge Daniel, Mr. Kemper "stated that the condition is unknown in the United States, but is discussed in a scientific article from Japan. Plaintiff submitted the article to the agency's hearing office in March 2007.  He also requested that the ALJ subpoena the doctors from Japan who wrote the scientific article to testify regarding his condition. The ALJ denied Plaintiff's request because he made no showing that the testimony was necessary to decide the case." *Kemper v. Astrue (II)*, 2012 WL 2190817, *2 (internal citations omitted).  This case is similar.  Mr. Kemper offers no evidence that any doctor in Japan has ever examined Mr. Kemper—either in person or via lab reports—or that the authors of this academic article can produce any testimony or evidence relevant to this case.

containing Dr. Iwamoto's address—which is immaterial to this case—and what appears to be a copy of the x-ray on page 299 of the record—which is not new evidence. Therefore a remand to consider this evidence is unnecessary.

### c. Substantial Evidence Supports the ALJ's Decision.

Finally, the Commissioner's decision is supported by substantial evidence. Mr. Kemper makes no specific argument that the decision lacks substantial evidentiary support, but because he is representing himself I examine the record for any grounds for reversal. That said, I can find no error in the ALJ's decision to give little weight to Mr. Kemper's own testimony regarding the limiting effects of his pain. As the ALJ points out, Mr. Kemper did not take any medication other than the occasional over the counter painkiller. R. 323. *Cf. Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) ("Though the claimant alleges he became disabled in August 1983, he did not seek medication for joint pain until 20 months later, or one month after he filed for Social Security disability benefits."). Mr. Kemper's statements are also somewhat inconsistent with his own testimony about his daily activities such as doing vacuuming and laundry and taking frequent walks. R. 86, 302, 325-29. Most importantly the medical evidence in the record does not support the severe restrictions Mr. Kemper alleged. *See Musgrave. v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (upholding an ALJ's credibility finding where the claimant's subjective complaints of pain were not backed up by objective medical evidence).

There is, to be sure, some diversity of medical opinion evidence in the record. And as Judge Daniel pointed out in his earlier order, Dr. Jack's findings are objective medical evidence that must be considered by the ALJ. That said, the ALJ's decision to discount the objective

medical evidence and opinion offered by Dr. Jack in her step four analysis was supported by substantial evidence in the record.[4]

The ALJ ultimately decided to give Dr. Jack's opinion little weight given several inconsistencies and the lack of objective evidentiary support for his conclusions. First, she found that Dr. Jack's opinion lacked weight because the suggestion that Mr. Kemper could not stand or walk for two hours per day or sit for six per day was inconsistent with other facts such as the fact that he was comfortable during the examination, had full strength in his extremities, and reported walking several miles at one time. R. 251. Dr. Jack's conclusions, in contrast to Dr. Kamer's, were based on relatively scant laboratory evidence. R. 251. *Cf.* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Dr. Jack apparently did not review the radiology report he ordered before drafting his conclusions and endorsing the postural limitations therein. That report revealed no significant abnormalities.

Furthermore, the ALJ had ample reason to give significant weight to the opinions of Drs. Clayton and Kamer. While Dr. Clayton's conclusions were based solely on a review of the paper record and not on a physical exam of Mr. Kemper, his conclusions meshed with the evidence as a whole which suggested only mild limitations on Mr. Kemper's ability to work. Perhaps most importantly, his conclusions roughly matched those of Dr. Kamer who not only reviewed Mr. Kemper's entire medical record but also had the opportunity to conduct a physical exam. R. 252.

**IV.   Order**

---

[4] It is important to remember that Judge Daniel's earlier reversals took place in the context of reviewing the Commissioner's denial of benefits at stage two where "a claimant need only make a de minimus showing of impairment to move on to further steps in the analysis." *Lee v. Barnhart*, 117 F. App'x 674, 677 (10th Cir. 2004) (internal quotation marks omitted).

The decision of the Commissioner is AFFIRMED.

DATED this 18th day of July, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge